## HORACE M. WHITMORE, APPELLANT, v. N. SHIVERICK, ET. AL., RESPONDENTS.

When there is a statement on appeal from the judgment, and subsequently a statement on appeal from an order overruling a motion for a new trial, each statement must be considered separately, and portions of one cannot be taken to aid the other.

It would be error to grant a new trial where there is no affidavit and no statement in support of the motion for that object.

A statement on appeal must be made within twenty days after judgment, and if a sufficient statement be not made within that time it cannot be subsequently made.

This Court will not reverse a judgment because the verdict or finding of facts is not sustained by the evidence, unless the appellant has made his motion and statement on motion for a new trial in the Court below.

" Copartnership property and assets" is joint property, within the meaning of that term as used in Section 32 of the Civil Practice Act.

Partners are *quasi* joint tenants, the survivor having a peculiar, qualified survivorship.

A partner cannot sell his interest in partnership property so as to deprive his copartners of their lien thereon for partnership liabilities. Nor can a mortgage executed by one partner have such effect.

Where A, B, C and D are sued as partners doing business under the name of A & Co., the summons is served on A only, and under our statutory provisions

Whitmore *v.* Shiverick.

judgment is taken upon default against A, and against the joint property of A & Co. This judgment is not defective as against the property of A & Co., because it turns out that the firm was composed of only A, B & C.

A judgment against the joint property of A & Co. would not affect the interests of D if he was not a member of that company.

Upon Rehearing.—The object of Sec. 32 of the Practice Act was to make the property of all partnership associations and joint associations liable on judgments obtained upon service of one member of the association.

A trifling variation between *allegata* and *probata* is not material where the facts constituting a proper defense are substantially stated.

Under the provisions of Sec. 32, one partner who is served must answer for all the partners or joint debtors who are sued, so far as the partnership or joint property is concerned.

When a party makes his defense to an action upon the ground that he acquired the property in controversy under an execution against A & Co., and in stating who composed that firm includes the name of one party who was not a member of the company, this is an immaterial variance.

As the law stood when this judgment was rendered, a firm or joint stock company could not be sued by the company name. But the suit being brought in the ordinary form, the judgment might go against one or more of the associates who were served with summons, and a sort of judgment *in rem* against the joint property of the association.

Partners may acquire property as joint tenants or as tenants in common; but whatever may be the technical terms of the deed, courts of equity will treat it as partnership property, or in other words, a personal property, wherever it has been acquired with partnership funds for partnership purposes.

Partners are joint tenants of personal property, with only a qualified right of survivorship, and in equity they stand in the same relation in regard to real estate.

When a finding of facts is defective, it must be excepted to in the Court below, or this Court will not reverse the case for such defect.

APPEAL from the District Court of the Second Judicial District, Ormsby County, Hon. S. H. WRIGHT, presiding.

The facts are fully stated in the opinion of the Court.

*G. A. Nourse*, for Appellant.

The statute does not require a statement on appeal to be served on the opposite side. It only has to be filed within twenty days. The judgment having been entered on the seventh, and the statement filed December 27th, was in time. (*Judd* v. *Fulton*, 10 Barb. 117; *People* v. *N. Y. Central R. R. Co.*, 28 Barb. 284.)

The statement on appeal from the order was made on the fourteenth day of after order, and clearly within time.

Respondents *filed* certain proposed amendments to the statement on appeal from the order overruling motion for new trial, but did not serve them. Not being served, they are under the statute a mere nullity, and the original statement must be considered agreed to. There were no amendments either served or filed, as to the other statement, and that also must be considered as agreed to.

The California statute differing widely from ours, their decisions quoted by respondent on this subject are not applicable.

The statement on appeal from the order overruling the motion for new trial sets out the errors relied on, and shows the statement on appeal contains " all the evidence" necessary to explain these grounds. The statement also shows that all the testimony contained in or referred to in said statement was used on the motion for a new trial.

If it appears all the testimony in regard to the errors complained of is before the Court, it is not all important that all the testimony in the case should be before this Court.

The motion to dismiss the appeal because of any supposed defect in statement is simply absurd. A party may appeal without any statement.

All the testimony contained in the statement on appeal might have come before the Court on motion for new trial, without statement, for it is all documentary.

The Court erred in finding the property in controversy the partnership property of Sperry & Co. The only evidence in the record in relation to the ownership of the property, is contained in the deed from Henning, J. A. Sperry and Nathaniel Shiverick, and the articles of copartnership between them. The deed makes them tenants in common, and the articles of copartnership do not vary these relations.

It is only where there is an agreement between the parties to that effect, that real estate used for partnership purposes becomes, even in equity, partnership property. (*Smith* v. *Jackson*, 2 Edw. 28; *McDermott* v. *Lawrence*, 7 S. and R. 438–441; *Sigourney* v. *Munn*, 7 Conn. 11, 20; *Frink* v. *Branch*, 16 Conn. 261, 270.)

Even if specified agreement be not necessary, it is conceded on all hands without a single case to the contrary, that real estate so

held by conveyance to the several parties, is not to be treated as partnership property at law or in equity, *unless purchased with partnership funds*. (1 Story Eq. Jurisp. Sec. 674; *Blake* v. *Nutter*, 19 Maine, 16; *Goodwin* v. *Richardson*, 11 Mass. 469; Collyer on Partnership, Sec. 135, citing *Dyer* v. *Clark*, 5 Metcalf, 562; *Howard* v. *Priest*, 5 Id. 582; *Sigourney* v. *Munn*, 7 Conn. 11; *Donaldson* v. *Cape Fear Bank*, 1 Dev. Eq. 103; *Pearce* v. *Trigg*, 10 Leigh [Va.] 406, *et al*.)

The mere fact that the property held by the members of the firm as tenants in common is used in and for the partnership business, or a mere agreement to use it for partnership purposes, is not itself sufficient to convert it into partnership stock.   There must be some evidence of further agreement to make it partnership property. (*Brooke* v. *Washington*, 8 Grattan, 256; *Frink* v. *Branch*, 16 Conn. 262.)

Even were the mortgaged premises partnership property in equity, still the grantors of defendant Frothingham acquired no title by their purchase at sheriff's sale, save of the undivided half held by Sperry as tenant in common with Shiverick.

Even if Sperry and Shiverick held the premises under their deed from Henning as partnership property, the legal title was not in the partnership as such.

Under all these decisions, the grantors in such case would take the legal title as tenants in common, and hold *in trust* for the partnership.   (3 Kent's Com. 37; Collyer on Partnership, Sec. 135, citing *Dyer* v. *Clark*, 5 Metcalf, 562; *Howard* v. *Priest*, 582–585; *Burnside* v. *Merrick*, 4 Metcalf, 527; *Hoxie* v. *Carr*, 1 Sumner, 173, 182, 183.)

Under our statute the legal title is all that could be reached by the execution relied upon, issued upon judgments in actions against the firm of Sperry & Co., alleged in the answer to have been composed of Sperry, Shiverick, E. P. Whitmore, and one Thomas McFarland.   The summons was served on Sperry alone; the judgment could only be enforceable against his "separate property" and the "joint property of all" the defendants in that action. (Sec. 32 of Practice Act.)

The Court below finds the firm of Sperry & Co. composed at

that time, of one person less than the firm sued in the action brought by Ruhling & Co. and Hickok & Co.

How could property, which the Court below finds in this action to have belonged to a firm composed of Sperry, Shiverick and McFarland at the time of the sale on execution under which defendant Frothingham claims, pass by such sale as the joint property of Sperry, Shiverick, McFarland, and *E. P. Whitmore*, all of whom were the defendants in the action in which the execution issued on which said sale was made ?

If said mortgaged premises were not " the joint property of all " the four defendants in said action, only the separate property of the defendant served [Sperry] could, under our statute, have passed by the sale.

In such case a conveyance by the parties holding the legal title to a *bona fide* purchaser or incumbrancer for a valuable consideration, without notice of partnership rights in the case, is valid. (Collyer on Partnership, Sec. 135, closing sentence; *Hoxie* v. *Carr*, 1 Sumner, 182–183; *Dyer* v. *Clark*, 5 Metcalf, 562; *McAllister* v. *Montgomery*, 3 Hayw. 96; *Coles* v. *Coles*, 15 Johns. 161; *McDermott* v. *Lawrence*, 7 S. and R. 438; *Ford* v. *Herron*, 4 Mumf. 316; *Frink* v. *Branch*, 16 Conn. 261, 271; *Buchan* v. *Sumner*, 2 Barb. Ch. 168, 198.)

Even if the partnership of Sperry & Co. held the equitable title to this property on execution, a common law judgment could not reach it. Such execution could only reach the legal estate of the party served. If it was desired to reach the equitable title of other members of the firm, a proper equitable proceeding should have been instituted; the execution at law only released Sperry's interest.

Even if this property was partnership property capable of passing under execution against Sperry & Co., still Shiverick's interest in this case did not pass, because he had, before the sale or levy, made a *bona fide* sale of his interest to a third party.

Nor is it material to show that the mortgages in question were recorded before the attachment was levied in the action against Sperry & Co.

A judgment creditor does not stand in the same position as a purchaser for a valuable consideration. The latter upon recording his conveyance, takes precedence as a prior purchaser of whose deed he has no *actual* notice unless the same be recorded. The former simply steps into the shoes of the judgment debtor by his purchase on execution. As an unrecorded deed is valid against the grantor, so it is against the purchaser on execution against such grantor. He simply takes such title as the judgment debtor has— no more. (Laws of 1861, p. 14, Secs. 25 and 26.)

There is no evidence to support the finding that the mortgagees took their mortgage with notice, nor could such evidence have been legally received, for there is no such allegation in the complaint.

*C. J. Hillyer,* for Respondent, makes the following points:

*First.* The record contains no statement on motion for new trial. The right to move was therefore waived, and the order denying the motion was correct. (Practice Act, Sec. 195; 2 Cal. 307; 3 Id. 89; 9 Id. 247; 12 Id. 425; Id. 492.)

*Second.* What purports to be a statement on appeal from the order denying motion for new trial, cannot be used for any purpose.

1st. It is neither agreed to nor settled by the Judge. The statement was filed January 19th. Amendment to the statement was filed January 23d. No settlement was ever had or asked for. It is therefore a nullity. (Practice Act, Secs. 276-7-9; 4 Cal. 284; Id. 215; Id. 244; 12 Id. 280; Id. 425 and 492; 13 Id. 170; 16 Id. 185; 20 Id. 177; see *Levy* v. *Fargo,* 1 Nev. 416.)

2d. Even if agreed to or certified, it is totally insufficient to enable the Court to review a decision upon the motion for new trial.

An appeal from an order brings up for revision the action of the Court below in granting or refusing the same, and that alone. The Appellate Court must decide the same question, and decide it upon the *same evidence* as the Inferior Court.

It is not authorized to decide whether or not the party was in fact entitled to a new trial, but whether the lower Court, upon the basis presented to it for its action, erred in its decision.

This can only be determined when the Appellate Court has placed before it in proper form the inducements to the action of the Court below.

The two tribunals must act on precisely the same premises, or otherwise they might draw different conclusions, and each be correct. For this reason, it is not necessary to make a statement on appeal from an order on motion for new trial. All that is necessary is a proper certificate to the statements or affidavit used on the hearing of the motion in the District Court. When made upon the ground that the evidence does not justify the findings, it must be done by statement. The statement must set out the evidence, if oral, or refer to it, if documentary, with such distinctness that the clerk can certify to the papers referred to.

If the party chooses to make a statement on appeal from such an order, that statement must purport to contain simply a history of what transpired before the District Judge on the hearing of the motion. He must set forth the representations on which he acted —all of them, and nothing beyond them. These principles are all well established. (*Gregory* v. *Frothingham*, 1 Nev. 253 ; *Gray* v. *Harrison*, Id. 502; 15 Cal. 198 ; 9 Id. 277 ; 10 Id. 480.)

The statement on appeal from the order does not purport to set forth the proceedings before the District Judge upon the motion, and must therefore be disregarded.

As to the statement on appeal from the judgment:

The appellant ought not to be allowed to make any use of this statement, for the reason that it was never served upon respondents or settled by the Judge.

No notice whatever of its filing was given to us, and we were ignorant of its existence until after the time for filing amendments had expired.

The statute seems most awkwardly to be silent as to any service, but the general rules of judicial proceedings will hardly permit a party to be bound by the action of the opposite party without notice in some form.

However, this is of little importance in this cause, inasmuch as the statement as filed is of no possible value to appellant.

The rule is well settled that upon an appeal from a judgment, the Appellate Court will not review the evidence or consider whether or not it sustains the verdict or findings.

This can only be done through a motion for new trial, and an

Whitmore *v.* Shiverick.

appeal from the order of the Court below on such motion. (*Lockwood* v. *Marsh*, recent decision this Court, April Term ; 2 Cal. 121 ; Id. 23 ; Id. 119 ; Id. 484 ; 3 Id. 179 ; 7 Id. 399 ; 8 Id. 108 ; Id. 537 ; 13 Id. 599 ; 15 Id. 380 ; 18 Id. 394 ; 26 Id. 599 ; 27 Id. 68.)

Under the rule the statement is easily disposed of. It contains two assignments of error in the *findings of fact,* with certain evidence to support them and nothing more. First, that the property was partnership property ; second, that the process was regularly served, which in fact involves the same question as to whether Sperry and Shiverick were partners. These being questions of fact, cannot be reviewed except through a motion for new trial. This leaves the case to stand upon the judgment roll, and the statement on appeal. Appellant in assigning errors, does not claim that the judgment is not in accordance with the findings.

*Second.* This mill was, at the time the mortgage was given, partnership property, belonging to the firm of Sperry & Co. The site was purchased and all the improvements erected jointly, with the money of that firm. This constitutes it partnership property, although in its nature realty. (*Delmonico* v. *Guillaume,* 2 Sandf. Ch. 366 ; Story on Partnership, Secs. 92–3 ; *Chase* v. *Steel,* 9 Cal. 64 ; Story's Eq. Jurisprudence, Sec. 674 ; 3 Kent's Com. 37 ; 1 Leading Cases in Eq. 240.)

*Third.* Real estate, acquired by a partnership for partnership purposes, is in equity deemed and treated as *personal* estate. It becomes a part of the stock-in-trade, and so far as the beneficial interest is concerned, is subject to the same rules of ownership and disposition as personal property. (*Dupuy* v. *Leavenworth,* 17 Cal. 262 ; *Buchan* v. *Sumner,* 2 Barb. Ch. 165 ; *Sigourney* v. *Munn,* 7 Conn. 11 ; Story's Eq. Jurisprudence, Sec. 674 ; Collyer on Partnership, Sec. 135, and note ; 3 Kent's Com. 37–8, and note ; *Delmonico* v. *Guillaume,* 2 Sandf. Ch. 366 ; *Hoxie* v. *Carr,* 1 Sumner, 173.)

A deed of one partner of his interest in partnership effects, does not pass an undivided interest in the property, but only an undivided interest in what is left after the debts are paid. (*Neal* v. *Jones,* 2 P. & H. Va. 339.)

Whitmore having taken the mortgages, with full knowledge of the indebtedness of the firm, took only a lien on any possible surplus after the payment of debts.

The proper remedy was pursued to reach the firm's interest, the title of the partner was sold for a firm debt, and the purchaser stood in the shoes of a creditor of the firm. He has a right to insist that the mortgagee shall only be entitled to any surplus left after payment of firm debts. This was the proper *forum* (a Court of Equity) to determine whether there was any surplus to which the mortgagees are entitled. The proof shows the whole property was exhausted in paying partnership debts. Therefore there is nothing for the mortgagees, and the bill must be dismissed. (*Schudder* v. *Delashment*, 7 Iowa, 39.)

The mortgage executed by one partner did not interfere with the rights of the partners to dispose of this property to pay partnership debts, neither did it interfere with right of creditors to sell it at forced sale. (See 7 Conn. 112, 324.)

The objection, that in describing the firm of Sperry & Co., we have named one who was not a partner in that firm is too technical. The material allegation is that Sperry & Co. contracted the debt, and there was a judgment against the defendant, and there was a judgment against the property of Sperry & Co.

The answer substantially, though not in direct terms, charges that Whitmore knew of the partnership character of the property. It charges that he took their mortgage fraudulently to defeat partnership creditors.

If it did not contain this averment, it is immaterial. If the mortgagee relies on the fact that he took the mortgage innocently and in ignorance of the partnership liabilities resting on the property, he has the affirmative; he must plead this fact in defense. (*Gallatian* v. *Erwin*, Hopkins' Ch. 48; *Gallatian* v. *Cunningham*, Hopkins' Ch. 48; *Denning* v. *Smith*, 3 John. Ch. 344; Story's Eq. Jurisprudence, Sec. 608.

Opinion by BEATTY, C. J., LEWIS, J., and JOHNSON, J., concurring.

This was a bill filed to foreclose a mortgage upon what counsel

in the cause term a tract of land.   The plaintiff alleges that in
February and March, 1862, the defendant, N. Shiverick, was the
owner of an undivided half interest in the property described in
the mortgages set out in the complaint; that being such owner or
having such interest in the property, he executed two mortgages,
one to the plaintiff, another to a third party who has since assigned
to plaintiff.

He makes N. Shiverick, Antoine Laroche, and Peter Frothing-
ham parties defendant, and prays a foreclosure and sale of the
interest mortgaged to him.

Frothingham answers, and states in his answer substantially that
at the time the mortgages were executed, the property belonged to
Sperry & Co., a firm composed of A. J. Sperry, N. Shiverick, E.
P. Whitmore, (the assignor of one of the mortgages to plaintiff)
and Thomas McFarland.   That at the time of the execution of said
mortgages the firm was insolvent, and they were executed for
fraudulent purposes.   That shortly after the execution of these two
mortgages, judgments were had against the firm of Sperry & Co.
for about $4,000.   That the entire property of the firm (including
this property, the undivided half of which Shiverick purports to
have mortgaged) was sold under execution, a regular conveyance
made thereof by the Sheriff, and that he (Frothingham) became
the owner by purchase from the party who bought at Sheriff's sale.
He relies on his title thus derived from a Sheriff's sale, as a defense
to this action.   Laroche disclaims all interest except as mortgagee
of Frothingham.

The cause went to trial in the Court below, and the Judge there
found the following facts and conclusions of law :

" The property described in the mortgages sued on was, at the
time they were executed, the copartnership property and assets of
the firm of Sperry & Co., and of this fact the plaintiff, at the time
the mortgage to him was executed, and E. P. Whitmore, at the
time the mortgage was executed, had notice.

" Also, at those times, the firm of Sperry & Co. was embar-
rassed, pressed by their creditors, unable to pay their debts, and
insolvent, and the said mortgagees respectively at the times they

took their mortgages, had notice of such embarrassment and inability to pay.

" Also, in an action commenced and pending in the District Court of Ormsby County, Territory of Nevada, by E. Ruhling & Co. against Sperry & Co., to recover a copartnership indebtedness of the latter firm to the former, the summons was served upon J. A. Sperry, a member of the firm of Sperry & Co.; and on the twenty-first day of April, A.D. 1862, E. Ruhling & Co. recovered judgment for the sum of $2,058.75 debt, besides $40.75 costs, which ·debt was the amount then due and owing by said Sperry & Co. to E. Ruhling & Co., and accrued subsequent to August 13th, A.D. 1861.

" Also, in an action commenced and pending in said District Court of Ormsby County by Hickok & Co. against said Sperry & Co., to recover a copartnership indebtedness of the latter firm to the former, the summons was served upon J. A. Sperry, a member of the firm of Sperry & Co., and on the eighteenth day of April, A.D. 1862, Hickok & Co. recovered a judgment for the sum of $2,229.25 debt besides $57.15 costs, which debt was the amount then due and owing by said Sperry & Co. to said Hickok & Co., and accrued subsequent to August 13th, A.D. 1861.

" The said judgments were severally docketed and executions issued thereon to the Sheriff of Ormsby County, under which said Sheriff sold said property, on the thirtieth day of May, A.D. 1862, to McCullough & Ruhling, composing the firm of E. Ruhling &·Co., for the sum of $4,698.29, which was paid by them and was the full value thereof, as well as the amount of said executions and costs; and after and upon the expiration of six months from the time of sale, said Sheriff executed a deed of said property to McCullough & Ruhling, composing the firm of E. Ruhling & Co., who thereafter sold the same to the defendant, Frothingham, and gave him possession, and the same has remained in his possession ever since, as owner thereof.

" The claims of other creditors of the firm of Sperry & Co. remain still unpaid. The property sold under said execution was the entire assets of the firm of Sperry & Co. During the time said liabilities of the firm of Sperry & Co. were incurred and the

said judgments recovered and sale made, the firm was composed of J. A. Sperry, N. Shiverick (who is one of the defendants in the action) and Thomas McFarland, and they represented to the creditors of said firm that E. P. Whitmore was also a member of said firm, which representation the said creditors believed to be true.

" The notes and mortgages mentioned in the complaint were all executed out of the State and Territory of Nevada, and in the State of California, and the note and mortgage executed to E. P. Whitmore became due and payable on the twenty-eighth day of June, A.D. 1862, and the other note and mortgage became due and payable on the tenth of September, A.D. 1862, and no action was commenced on either until the commencement of this action.

" The conclusions of law upon the foregoing facts are that this action is not barred by the Statute of Limitations; that the said property and its full value was necessarily and properly applied to the payment of copartnership liabilities of Sperry & Co. to Hickok & Co. and E. Ruhling & Co.; that the purchasers of said property, under the execution in favor of Hickok & Co. and E. Ruhling & Co., and those holding under them, are entitled to hold said property free and clear of any and all incumbrances by virtue of said mortgages, or either of them, and that said mortgages, or either of them, cannot be enforced against said property.

" Let judgment be entered accordingly.

" R. S. Mesick, District Judge."

The findings of the Court were filed December 6th, a judgment entered up December 7th, and on December 8th a paper was served by the appellant (plaintiff in the Court below) on respondent's counsel which may, we suppose, be properly termed a notice of motion for a new trial, although not in the usual form of such notice. This notice does not seem, however, to have been followed up by any statement whatever on motion for a new trial. On the twenty-seventh of the month a statement on *appeal* was filed. This, it will be seen, was many days after the time for statement on motion for new trial had expired. On the fifth of January, 1867, the motion for a new trial was called up and overruled.

On the nineteenth of January, 1867, *a statement on appeal from the order overruling the motion for a new trial was filed* by appellant.

The first question to be determined is, what figure do these state-ments cut in the case ? The first statement as a *statement on appeal*, which is clearly contemplated by the statute, was made in time, and if it shows any such error as can be reviewed where there is no motion for a new trial, it is sufficient to reverse the case. This statement we will hereafter notice. The second statement can serve but one purpose; that is, to show that the Court com-mitted some error in overruling the motion for new trial. We can-not mix up the two statements, taking portions of one to help out the other.

There are here two separate and distinct appeals—one from the judgment, the other from the order overruling the motion for a new trial. Let us first examine the latter. Before a District Court can regularly grant a new trial two preliminary steps are necessary. First, there must be a notice served on the adverse party that a motion for that purpose will be made. Second, that notice must be followed either by affidavit or else by a statement showing the grounds upon which such motion will be based. The statute declares that if such affidavit or statement is not filed within the prescribed time, " the right to move shall be deemed waived." In this case, " the statement on appeal from the order of the Court overruling the motion for a new trial " totally fails to show that there was either an affidavit or a statement filed in support of the motion. Consequently the Court did not err in overruling the motion for a new trial. The Court could not grant the appellant's motion when by his own conduct he had waived the right to move for a new trial. This latter statement then, not being available to show that the Court erred in overruling the motion for a new trial, ceases to be a paper of any importance in the case. As we have already substan-tially said, it cannot be appended to and made a part of the origi-nal statement on appeal. That statement had to be made within twenty days after judgment. If no amendments were offered it could not be patched up by another statement made more than forty days after judgment. The latter statement would properly include only such things as accrued subsequent to the trial and pending the motion for new trial. If it contains other matter, it is surplus-age and must be disregarded. Having disposed of the appeal from

the order overruling the motion for a new trial, let us now examine the appeal from the judgment.

The statement on appeal commences in this way :

" The plaintiff's statements on appeal from the judgment in this cause : The ground upon which the plaintiff will rely on appeal is the *evidence*, findings, and decision of the Court that the mortgaged premises set out in the complaint herein at the time the mortgages were executed were the partnership property, and the assets of the firm of Sperry & Co."

If we give to this language its literal meaning, it shows that the evidence established just what the appellant complains was not established, to wit: that the mortgaged property was partnership property at the time of the Sheriff's sale.

We presume (though the language used does not convey the idea) the appellant meant to complain that the finding of the Court to the effect stated was *not* supported by the evidence in the case.   Overlooking the error in this part of the statement, let us see how the remainder of the statement is made up.

Immediately following what we have before quoted and commented on, is the following language : " and that the *mortgages* [mortgagees] severally had notice thereof; that the said company was insolvent, of which said mortgagees had notice, all the evidence in the case tending to prove the tenure by which said company held said property, and plaintiff's notice thereof and of the company's indebtedness, is the deed from J. S. Henning to J. A. Sperry and N. Shiverick, conveying said property to them, which deed was introduced in evidence at the trial, a copy of which is herein contained and made part hereof; the depositions of said Sperry and Shiverick in evidence, copies of which are herein set out and made part hereof.   In addition to this evidence, the plaintiff testified that the consideration of the notes and mortgages was money advanced for and used in improving the mortgaged property and in paying the debts of Sperry & Co., which advances were made prior to the indebtedness to Hickok & Co. and E. Ruhling & Co., and that he, the plaintiff, did not know of the embarrassment of Sperry & Co. until after the expiration of these mortgages ; and that E. P. Whitmore had no knowlege of the condition of the affairs of Sperry & Co.

" And in the further error of the Court, in its findings and decisions, that in the said proceedings of E. Ruhling & Co. and Hickok & Co. against Sperry & Co., the title to or interest in said mortgaged premises of N. Shiverick and his mortgagees passed to the purchaser under such proceedings at Sheriff's sale, etc., without any process or summons having been served on said Shiverick and his mortgagees, and it being in evidence that no process was ever served in either of said proceedings on any of the persons made defendants therein, except on said Sperry. (Deed from Henning to Sperry & Shiverick, to wit.)"

After this follow the deed, an agreement, several depositions, etc., all seeming to have been documentary evidence in the cause. The statement then winds up as follows :

"And the plaintiff says the foregoing statement contains all the evidence in said case tending to prove the tenure by which said Sperry and said Shiverick held the mortgaged property described in the complaint, or of the notice of the plaintiff, or said E. P. Whitmore of the pecuniary position of the firm of Sperry & Co. at time of accruing of the indebtedness mentioned in the complaint, or at the time of the execution of said mortgage."

The first question is, does this statement negative the idea that there may have been before the Court below sufficient evidence to show that Sperry & Co. were the owners of the property in dispute at the time they were so found to have been by the Judge who tried the case ? If we give a very liberal interpretation to the language used, perhaps it does. But the language is extremely confused, and not clearly intelligible. The statement is *ex parte*, never served on the opposite party, no amendments offered thereto, and not settled by the Court. Such a statement is allowed by the statute. Statements on appeal are (probably by an oversight of the Legislative branch of the Government) not required to be served. But whilst such a statement must be tolerated, it should not be allowed to establish more than is *clearly stated*.

We should hesitate then to hold that this statement was sufficient to authorize this Court in saying the first finding of fact by the Court below is not supported by the evidence. But if this part of the statement had been ever so clear and explicit, there is another

objection to reversing the judgment on the ground that the findings are not sustained by the evidence.

Our Practice Act was copied almost *verbatim* from the California Practice Act as it stood at the time ours was enacted. Under the California code of practice, the Supreme Court of that State had almost uniformly refused to review the facts of a case unless there had been a regular statement and motion for new trial. (See *Brown* v. *Graves*, 5 Cal. 119–20; *Brown* v. *Tolles*, 7 Cal. 399; 8 Cal. 108; 15 Cal. 380; *Gagliardo* v. *Hoberlin et al.*, 18 Cal. 394.)

The only conflict that we can discover in the California cases on this point, was in holding, in some instances, that the rule did not apply to actions of equitable cognizance, but was confined to those of a strictly legal nature. But finally this distinction ceased to be recognized, and in the last case cited was distinctly overruled, and since then the rule made applicable to chancery cases and actions at law. We deem it best to follow the practice thus established in California, and think it especially appropriate that the practice should be established in a case of this kind, when it is so extremely doubtful if the statement would aid the appellant, even if we were to decide that we could review the facts of the case on the statement on appeal, without any previous motion for new trial. Whilst the party that complains that the verdict of a jury or the finding of the Court is against the evidence in the case must present that particular point by motion for new trial, or it cannot be looked into in this Court, we do not mean to say other errors committed in the progress of a trial may not be brought up either upon a bill of exceptions or upon statement on appeal. Doubtless most errors committed during the progress of a trial may, at the option of the appellant, be first brought under review in the Court below upon motion for new trial, and upon that Court refusing relief, be reviewed here on appeal from the order refusing a new trial; or they may be brought directly before this Court on an appeal from the judgment. This Court can look into bills of exception, statement on appeal, the findings of the Court and the judgment roll, for the purpose of correcting errors shown by any of these records. But for the purpose of setting aside a verdict or finding on the ground of its not being sustained by the evidence, it can only look to a statement on motion for new trial.

Having disposed of the statements in this case, it only now remains to determine whether the judgment of the Court below is justified by the pleadings and by the findings of fact by the Court.

The findings of fact by the Court say the property in dispute was, at the time the mortgages were executed, " the copartnership property and assets of the firm of Sperry & Co."

Section 32 of the Practice Act is as follows: " Where the action is against two or more defendants, and the summons is served on one or more, but not on all of them, the plaintiff may proceed as follows: First, if the action be against the defendants jointly indebted upon a contract, he may proceed against the defendant served, unless the Court otherwise direct, and if he recover judgment it may be entered against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all, and the separate property of the defendant served: or second, if the action be against defendants severally liable, he may proceed against the defendants served, in the same manner as if they were the only defendants."

In this case the suits of Ruhling & Co. and W. B. Hickok & Co., on whose judgment the property was sold, were commenced against N. Shiverick, A. J. Sperry, Thomas McFarland, and E. P. Whitmore, composing the firm of Sperry & Co. The summons was served on A. J. Sperry only, and judgments taken against him personally and against the joint property of Sperry & Co. The first question is: does the finding of facts show that this property, at the date of their judgments, was the joint property of Sperry & Co. ? It appears to us it does. The language of the finding does not use the word *joint*, but it says *copartnership property and assets*. Collyer on Partnership, Sec. 123, p. 108, quotes approvingly this language from Lord Hardwicke: " The partners themselves are clearly joint tenants in the stock and effects. They are seized *per my et per tout*." Finding that this property was copartnership property was in effect finding it was the joint property of the partners composing the firm of Sperry & Co. But even if there was a question about copartnership property and assets being technically *joint* property, still it was clearly joint property as

contemplated by the thirty-second section of the Practice Act. The very object of that Act was to authorize a judgment, after service of summons on one member of a trading or manufacturing firm, which would reach the entire partnership property. We think the finding of the Court here sufficiently shows this property was subject to an execution against the property of Sperry & Co.

Holding, then, that Sperry & Co. were the joint owners of the property up to the time of the execution of the mortgages, the question naturally arises: what effect did the execution of these mortgages have upon the property? When two or more parties hold property by joint title, and one of the joint owners conveys his interest, the joint tenancy is immediately destroyed. So too, it is said that if one of the joint tenants mortgages his interest in fee, this will destroy the joint tenancy. (See Hilliard on Mortgages, vol. 1, p. 12.)

This latter proposition, however, we are inclined to doubt, or rather to think too broadly expressed. Where the title to mortgaged premises rests before foreclosure, seems to be one of those points on which neither Courts nor commentators agree. The decided preponderance of opinion, however, seems at this day to be in favor of the proposition that the title does not pass from the mortgagor before breach of condition. By many it is held that even after breach of condition the title still remains in the mortgagor until foreclosure. We are satisfied the best authorities hold that the title remains in the mortgagor until breach. If the fee remains in the mortgagor until breach, we do not see on what principle it can be held that a mere mortgage, not changing the fee of the property, should destroy a joint tenancy. We are not disposed to hold a proposition so apparently against principle, upon the mere opinion of Mr. Hilliard, however respectable that may be, without some judicial decision to sustain him. Hilliard cites Powell on Mortgages (a work we have not at hand) to support his opinion. Whether Powell is supported by any judicial decision we are unable to determine.

The reasons for holding, in this case, that a mortgage by one of the joint tenants should not have the effect of destroying the tenure by which the partners hold the property, are much stronger than in

an ordinary case of joint tenancy. Partners are only *quasi* joint
tenants; or to speak more accurately, it may be said that partners
are joint tenants whose rights and duties are qualified in many re-
spects by the law merchant. The right of survivorship exists only
in a limited and qualified manner. A surviving partner takes the
property, and may sell and dispose of it for the purpose of settling
the partnership affairs. But unlike other survivors, (who take the
joint property for their own use) after the partnership affairs are
settled he must account to the representative of the deceased part-
ner for his net interest in the partnership effects.

On the other hand, ordinary joint owners may at their pleasure
sell their joint interest and thus destroy the joint tenancy. A
partner cannot sell his interest in the partnership property, so as to
deprive his cotenants of their lien on the property for partnership
debts or liabilities due from the party selling. As the mortgages
in this case were given on partnership property, and with a full
knowledge on the part of the mortgagees that it was partnership
property, we think they did not change the tenure by which the
property was held, and that it was liable to be sold under any exe-
cution which was legally issued against the property of Sperry &
Company.

But it is contended by appellant that there was no legal execution
against Sperry & Co., because Ruhling & Co. and W. B. Hickok
& Co. sued Sperry & Co., consisting of four members, and the find-
ings in this case show that the Sperry & Co. who were interested
in the property in dispute only consisted of three members.

We think this is hardly a correct view of the case. Ruhling &
Co. and Hickok & Co. sued *the* Sperry & Co. who were erecting a
mill and transacting business with them. Of this company, beyond
all question, A. J. Sperry was one member. In their complaints
they allege that Shiverick, McFarland and Whitmore were also
members of that firm. The Court in this case find they were mis-
taken as to Whitmore being a member; that only the three first
named were partners in the firm.

Now it appears to us that was an immaterial fact, and ought not
to have been investigated in this case. Sperry was served with
summons and was bound to make his defense or ever after hold his

peace. He might have shown that he never made a contract or contracted a debt to the plaintiffs jointly with Whitmore, and this would have been a good defense to the action unless the plaintiffs had by leave of the Court amended their complaint (as they could have done under our statute) and stricken out the name of Whitmore. But Sperry made no such defense to the action, and consequently the judgment was good against him. It would be strange indeed if a stranger to the proceedings could be allowed to come in at this late date and make a defense for Mr. Sperry, which he declined to do for himself when he had an opportunity, four or five years since. The judgment, so far as it is a complete judgment, is only against Sperry. So far as it affects the joint property it only reaches it through Sperry as one of the members of the firm of Sperry & Co. The execution could only be levied on the individual property of Sperry and the joint property of the company which he represented. If Whitmore was a member of that company it was right that his interest in the joint property should be sold; if he was not, certainly a judgment against the property of the firm did not hurt him.

Here the executions were levied on property which the Court finds belonged to Sperry & Co. That is, to that firm of which A. J. Sperry (who was served with summons) was a member, and with which Ruhling & Co. and W. B. Hickok & Co. had dealings. If it belonged jointly to that firm, it was wholly immaterial whether the firm consisted of three or three hundred persons.

The judgment of the Court below must be affirmed.

---

RESPONSE TO PETITION FOR REHEARING.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

We granted a rehearing in this case mainly because the principal points in the case, on which our first decision rested, had been scarcely noticed by counsel in their arguments or briefs.

The proper construction to be put on Sec. 32 was one important question which we were anxious to have fully discussed. That dis-

cussion has, however, only confirmed us in our views, heretofore expressed, in regard to that section of the Practice Act.

The object seems to have been to make all partnerships or joint associations, so far as their joint property was concerned, answerable on judgments obtained by the service of summons on a single member, the service on one member having the same effect on the company as service on a proper officer of a corporation has on such a body. Keeping this object of the law in view, many of the objections raised by appellant to this judgment seem to be very readily disposed of.

The first objection raised by appellant is that defendant Frothingham pleads that the title to the property in controversy, when Shiverick executed his mortgage, was held jointly by A. J. Sperry, N. Shiverick, E. P. Whitmore, and Thomas McFarland, composing the firm of Sperry & Co., while the findings show that only three of those parties compose that firm. Therefore the answer and findings, being at variance, do not support the judgment for defendant. That if the proof does not support the allegation of the answer, the defense must fail.

A trifling variance between the *probata* and *allegata* is not material. Here the variance was of no manner of importance. In the suits of Ruhling & Co. and Hickok & Co. four parties were sued, the complaint alleging they all four composed the firm of Sperry & Co. One of the four parties (confessedly a member of that firm) is served, and being so served, the law makes him answer for all his partners. They are (to the extent of the partnership funds) just as much bound by his action as they would be by the action of an attorney employed by them jointly. Now Sperry confesses (and in confessing for himself he confesses for all his partners) that the firm was composed of the four members charged in the complaint of Ruhling & Co., as forming that association. So far, then, as that company is concerned, it is admitted Whitmore is a partner; and no member of that company, nor any person claiming under them, can be permitted to say he was not a partner. With regard to E. P. Whitmore himself, of course the thing would be different. He, not being a member, would not be affected by the admissions of parties with whom he was not connected.

The real defense here set up by Frothingham was, that the property, when Shiverick executed his mortgage, belonged jointly to Sperry & Co., and was bound for their joint debts, etc.  The fact that he was mistaken as to the number of persons composing that firm was of no importance whatever.

Appellant contends that if this was partnership property, held jointly by the partnership firm of Sperry & Co., still each partner might mortgage his individual share, and the mortgage would be good against all persons, except partners and creditors of the firm. That is true.  But in this case it is claimed that a creditor sold this property under regular proceedings against the firm.  If so, the entire title passed, and Frothingham holds under the claim of a creditor.

The clerical error of the Judge in writing J. A. Sperry for A. J. Sperry is certainly a matter of no importance.  Nor is it of any importance that the Judge, in speaking of the judgments against Sperry & Co., spoke of the plaintiffs as Ruhling & Co. and Hickok & Co., instead of mentioning the names of the persons composing such firms.  These objections are rather too technical to be seriously considered.

Nor is the objection that no judgment *eo nomine* could be entered against Sperry & Co. any more tenable than the other.  The judgment in this case, so far as it was a personal judgment, was only against Sperry, the defendant served ; but it was also a sort of judgment *in rem.* against the partnership effects of Sperry & Co. The debt was contracted by the firm of Sperry & Co., and all the joint property owned by the members of that firm was bound for it. The counsel for appellant seems wholly to lose sight of the distinction between " defendants jointly indebted" and defendants jointly sued.  In this action, four defendants were jointly sued, but it turns out that only three of them were jointly indebted.  Now this judgment, which is in the nature of a judgment *in rem.*, is only effective against the joint property of three of the defendants sued, for it seems Whitmore was not bound by the joint contract.  If in fact there had been joint property held by Sperry, Shiverick, Whitmore, and McFarland, and it had been sold under this execution, Whitmore could certainly, by a proper proceeding, have set aside

the sale, or at least recovered his fourth of the property, by show-ing he was not a member of the firm of Sperry & Co.; for he not being a partner of Sperry, nor a joint contractor with him, was not bound by his silence or his confession.    But the other three being actual partners in the firm of Sperry & Co., they were, in the language of the statute, " defendants * * *jointly*" *indebted,* and as such their joint property was bound.

It is contended that this property could not pass under the sec-tion of the Practice Act heretofore referred to, because that only refers to *joint* property, and partners cannot hold real estate as *joint owners;* and in support of this proposition we are referred to the case of *Howard* v. *Priest,* and *Dyer* v. *Clark,* 5 Met. Mass., and Sec. 135 of Collyer on Partnership.    These cases do not, in our opinion, sustain any such proposition.    At law, partners, like any other persons, may take a conveyance of real estate to them-selves, either as joint tenants or tenants in common.

To show that such was the opinion of the Court in the case of *Dyer* v. *Clark,* just referred to, we need only quote the following language of Chief Justice Shaw in delivering the opinion in that case : " Should the partners take their conveyance in such mode as to create a joint tenancy, *as they still may,* though contrary to the policy of our law, still it would not accomplish the purpose of the parties."    In the foregoing quotations the italics are our own.

Then in truth, partners may hold real estate, so far as the legal title is concerned, like any other persons, either as joint tenants or tenants in common.    But when property has been acquired with partnership funds and for partnership purposes, whatever the legal tenure may be, Courts of equity will treat it as partnership property. Or, as Courts sometimes say, they will treat it as personal property. Of personal property, partners are admitted to be joint tenants. Yet Courts of equity, in speaking of real estate held by partners, always say that in equity it will not be treated as joint property, but as held in common, each tenant in common holding his interest in trust for the partnership.    They say they cannot hold it to be joint property, otherwise, the *jus accrescendi* would intervene in case of the death of one of the parties, to the great detriment of trade.    But the *jus accrescendi* applies as well to personal property as to real

estate, yet the Courts have no hesitation in calling the personal property of partners joint property.

Now the truth is, that phrase, *jus accrescendi*, when applied to real estate, seems to have frightened Courts into all sorts of absurd and contradictory expressions. It does not seem to have done any harm so far as results were concerned, but merely led to confusion of expression. As regards personal estate, the phrase seems to have been very harmless. Judges could deal with it without being frightened out of their propriety.

Chief Justice Shaw, in delivering the opinion of the Court in the case of *Dyer* v. *Clark*, (5 Met., p. 576) uses this language: " Such, indeed, is the result of the application of the well known rules of law, when the partnership stock and property consist of personal estate only. And as partnerships were formed mainly for mercantile transactions, the stock commonly consisted of cash, merchandise, securities and other personal property ; and therefore the rules of law governing that relation would naturally be framed with more especial reference to that species of property. It is therefore held that on the decease of one of the partners, as the surviving partner stands chargeable with the whole of the partnership debts, the interest of the partners in the chattels and choses in action shall be deemed so far a joint tenancy as to enable the surviving partner to take the property by survivorship, for all purposes of holding and administering the estate, until the effects are reduced to money and the debts are paid ; though, for the purpose of encouraging trade, it is held that the harsh doctrine of the *jus accrescendi*, which is an incident of joint tenancy at the common law, as well in real as in personal estate, shall not apply to such partnership property ; but, on the contrary, when the debts are all paid, the effects of the partnership reduced to money, and the purposes of the partnership accomplished, the surviving partner shall be held to account with the representatives of the deceased for his just share of the partnership funds." In plain English, personal property of partners is joint property with only a qualified right of survivorship. Real estate is in law common property or joint property, just as the deeds of the conveyance make it. In equity, all real estate acquired with partnership funds and used for partner-

Whitmore *v.* Shiverick.

ship purposes, is, like personalty, joint property, with only a quali-
fied right of survivorship.

The answer of Frothingham in this case alleges that the prop-
erty which was sold under the judgments of Ruhling & Co. and
Hickok & Co., was the joint property of Sperry & Co.   The find-
ing of the Court in reference to this matter is that the property
was the copartnership property and assets of the firm.   It would
have been more satisfactory if the finding had been more explicit
as to the tenure by which this property was held.   An Act, how-
ever, passed by the Legislature of this State, approved March 11th,
1865, in relation to appeals, contains the following section:

" In cases tried by the Court without a jury, no judgment shall
be reversed for want of a finding, or for a defective finding of the
facts, unless exceptions be made in the Court below to the finding
or to the want of finding; and in case of a defective finding, the
particular defects shall be specifically and particularly designated;
and upon failure of the Court below to remedy the alleged error,
the party moving shall be entitled to his exceptions, and the same
shall be settled by the Judge, as in other cases; provided, that
such exceptions to the finding shall be filed in the Court within five
days after the making of the finding or decision to which exception
is made."

In this case it seems to us, if the plaintiff thought this finding
not sufficiently specific as to the tenure by which Sperry & Co.
held this property, he should have excepted to this finding, point-
ing out its particular defects.   In the absence of such exceptions,
we think it sufficient to support the judgment.   The judgment of
this Court will be in accordance with the opinion heretofore filed.

JOHNSON, J., not having joined in the order granting a rehearing,
does not participate in this decision.